# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | : | |
| ANTONIO OTERO NAZARIO | : | CASE NO. 13-05391-MCF |
| | : | CHAPTER 13 |
| Debtor | : | |
| | : | |

### DEBTOR'S RESPONSE AND MEMORANDUM OF LAW
### IN OPPOSITION TO TRUSTEE'S OBJECTION TO EXEMPTIONS

COMES NOW, the Debtor in the above-captioned case, acting through counsel and very respectfully alleges and prays as follows:

RESPONSE TO TRUSTEE'S OBJECTION TO EXEMPTIONS

1. For the reasons that follow, the Debtor prays the Trustee's objection to his claim of homestead exemption under local law be overruled and the case set for plan confirmation. Contrary to the Trustee's textualist argument, this contested matter is not about the meaning of the word "exclusively". For that reason, this contested matter cannot be decided by applying in isolation the strict, literal meaning of the word "exclusively" found in a statute containing thousands of words in its provisions. Therefore, no amount of consulting dictionaries or googling the word "exclusively" can become the basis for the Court's decision on the true scope, operation and application of the fundamental social and economic policies contained in *any* homestead law.

2. The Debtor filed the present case on June 28, 2013.[1] On Schedule A the Debtor listed his residential property consisting of his two-level home and 500 s/m lot of land located in Manati, P.R. (the "house") In Schedule C he took an exemption over this property under P.R. Law 195-

---

[1] The Debtor has a family of three surviving on food stamps, a small pension, $400 in rent income and excludable social security income. Most notably, the Chapter 13 plan offers $300 during 60 months, supported entirely by the rent income produced by the lower-level of the Debtor's principal residence.

2011 of September 13, 2011, as amended, hereinafter referred to as the "Homestead Act". It is uncontested that 1) the Debtor owns the house and he does not own any other residential property; 2) the Debtor and his non-filing spouse live in the house and it serves as the Debtor's principal residence; and 3) the Debtor currently rents a portion of the house to other people. Other relevant facts concerning the property are that the Debtor converted the house into two levels for the purpose of providing housing to his children and grandchildren. The Debtor lives upstairs and sometimes rents the lower-level on a verbal, month-to-month basis to tenants. The tenants' rights to accessing the property for purposes of using it as their dwelling place. The Debtor is responsible for maintenance and all legal matters, such as taxes. The tenants are subject to termination and ouster from the property on 30-day's notice. Consistent with prior experience, the Debtor fully expects to have to house his family during periods of family hardship.

3. The relevant parts of Section 3 of the law in dispute read as follows:

"Every individual or head of household domiciled in Puerto Rico shall have the right to possess and enjoy, under the concept of homestead, a farm consisting of a parcel of land and a structure located thereon, [...] that he owns or legally possesses, **and that is occupied by him or his family exclusively as a principal residence**". (*Homestead Act, Section 3*) (bold supplied).[2]

4. The Chapter 13 Trustee, the Hon. Alejandro Oliveras Rivera, Esq., filed an objection to the Debtor's homestead exemption under the Homestead Act. (Dkt. 12) The Trustee followed up his objection with a memorandum of law. (Dkt. 21) (the "Trustee's Memo")

---

[2] An equally just and proper translation of the statute at issue can be: "**..., and that is occupied by him or his family as his exclusive principal residence**." We urge the Court adopt this reading, though the Debtor stresses that this is not a contest of semantics, grammar or translation, but one of policy, equity, judicial tradition in favor of granting and extending exemptions to debtors, and simple common sense based on factual reality and the purpose of the law.

5. Specifically, the Trustee argues that section 3 of the Homestead Act limits the actual use **and** occupancy of a home to that of purely residential purposes while being exclusively occupied by the Debtor or his family, and no one else. Thus runs the Trustee's argument: Because other people pay rent to live in the Debtor's house, then the house must lose its character as a "*principal residence*" under the Act and cannot retain its wholly exempt status for debt collection purposes. In essence, the Trustee argues that 'exclusively' conditions the <u>use</u> of the house to be *exclusively occupied by the Debtor exclusively as a principal residence*. The Trustee urges this Court to re-write and repeal the Homestead Act by inserting the word 'exclusively' both before and after the word 'occupied'. In fact, the Trustee stretches his argument to impose a structural limitation making the Debtor's house completely ineligible for homestead protection because it has more than one dwelling unit that can be used as a residence. (Trustee's Memo, §§ 5, 11) Clearly such a far-fetched conclusion is wholly without factual, legal, public policy or legislative support, and the Trustee offers none in support of his objection.[3]

6. The Debtor's position is that the statute is vague and some aspects of the wording lack precision, but its purpose is clear and unambiguous and the historically important policies underlying the statute must prevail and be enforced to benefit homesteaders. The Act exempts a structure and the land where it is located, so long as the Debtor uses it as his principal residence. Otherwise, the Homestead Act does not forbid other uses for the Debtor's property nor does it forbid other persons dwelling within its structures and this Court should not legislate such restrictions at the behest of the Trustee.

---

[3] The Trustee points to the decision on this same issue entered in bankruptcy case # 13-03127 decided by the Honorable Brian K. Tester, granting the Trustee's objection to a claim of homestead exemption under the Homestead Act under similar facts. The Debtor respectfully disagrees with that decision and notes that it is not binding on this Court. Also, and in fairness to the Honorable Judge, Tester, the record of the case is chock-full of requests to the Debtors, almost pleas from Court for the Debtors to brief the matter thoroughly and file a fuller record upon which the Court could consider its decision. Unfortunately, but understandably, the Debtors chose to accommodate the circumstances to the exigencies of confirmation, and settled the matter with the Trustee without challenging the decision.

7. Despite the unfortunate use of the word 'exclusively' in this context, the purpose of the Homestead Act is clear and unambiguous and liberal enforcement of its protections is of fundamental importance to accomplish the paramount economic and social policies underlying the law. The *Statement of Motives* of the Act provides the legislative intent of the law. Contrary to other states, Puerto Rico has over 70% of home ownership. Since 1903, the concept of exempt homestead in Puerto Rico was based on guaranteeing that a certain amount of money was preserved for the homesteader who lost his home to creditors. As such, it was a personal right afforded to debtors, and only for a sum certain of money that must be reserved for the disgraced homeowner who lost his home to a debt collector with an enforceable judgment. With various important amendments and permutations in terms of procedure and substance, the basic protection of the homestead under Puerto Rico law remained the same until 2011, that is, the law protected a fixed sum of money in case of levy and auction of the homestead by a creditor, but not the estate itself. Law 195-2011 ushered in a sea change of new and valuable protections to homesteaders.

8. The Homestead Act is no longer a personal right quantifiable in dollars and cents. The Act creates an *in rem* right of protection that attaches to the estate itself, that is, to the land and the structure that serves as the homesteader's principal residence, and protects it from attachment and forced sale by commercial creditors, with few exceptions not relevant to this discussion. Gone are the days of affording homesteaders a minimal amount of money after suffering the trauma of losing their home to creditors. The legislator recognized the terrible consequences of losing your home to debt collectors, not only economic, but also the emotional toll wrought on the debtor's family. In essence this law protects Puerto Rico's most basic institution, the family,

from the social, economic and emotional trauma of losing its home. *Homestead Act, Statement of Motives, pgs. 1-2.*

9. The law is clear that it is the 'land' and the 'structure located thereon' to which attaches the homestead right of exemption as an *in rem* right. The exemption is not aimed at the residential unit or units contained in the structure as incorrectly premised by the Trustee in support of his objection. (Trustee's Memo, ¶5)

10. The Trustee misconstrues the Act in this important aspect when he argues that the law limits the exemption to just one principal residence per structure. (Id.) Quite logically, the law silent on the number of dwelling units that a structure can contain or the number of structures on the land; the law simply exempts the land and the residential structure, without regard for the number of dwellings contained within the structure.

11. Section 4 of the Homestead Act contains the few, limited exceptions to the law that will destroy the right of full exemption. Nothing in Section 4 speaks of renting the property as a basis to annul, abandon or destroy the homestead exemption. A review of the Statement of Motives of the Act does not disclose any intent by the legislator to actually restrict the use of homestead property for the exclusive use by its owner and only as his residence. The Act simply compels the homesteader to claim as a homestead that property where he actually resides in, principally. In other words, the Court must not accept that the use as a principal residence in the Act actually limits other functional, practical and economic uses that can be given the exempt structure, for it is the 'structure' that is exempt under the law, not its use as the Debtor's principal residence. In short, the Trustee's 'strict usage' theory is without any support in the facts, the law or the history of the law, except for his exclusive reliance on the term 'exclusively'.

5

12. The Trustee's use and structural limitation argument is flawed because it fails to consider the operation of the Homestead Act in conjunction with other equally important laws that affect residential property owners. The local property tax code (colloquially known as CRIM) allows a real property tax exemption for a person's principal residence (a full tax exemption that is prorated after certain values not relevant to this discussion). Yet, the same code provides that taxpayers can use a certain percentage of their residence for other uses and purposes such as professional practices and offices, without limiting or destroying the properties' CRIM tax exemption. Furthermore, the new "IVU" code (value and use tax code) provides that lessors of real property must regularly pay 7% to the state from their rental income. The IVU code does not discriminate against homeowners who rent parts of their homes, and indeed promotes the rental of residential property by simply requiring homesteaders to register and report the rent income and pay their 7% tax. In fact, the Debtor is already registered under the IVU Code and the government did not challenge his claim of homestead exemption. Once again, the IVU code does not limit, nullify or destroy the CRIM tax exemption or the homestead exemption of a principal residence that is partially rented out. Thus, the Trustee's objection is untenable because it purports to analyze and apply the Homestead Act in a complete legal, factual and legislative vacuum. To hold for the Trustee, the Court must assume that the legislator was completely unaware of the interplay between the CRIM and IVU codes and the Homestead Act.

13. The word 'exclusively' in Section 3 of the Act serves as a statute of frauds because it is undisputable that many people own more than one piece of residential property in Puerto Rico. The Court and all concerned should take notice that many, perhaps an important portion of residential properties in Puerto Rico were constructed or have been refurbished to contain more than a single residential unit. The term exclusively does not restrict the use of the house itself to

being solely and exclusively inhabited by the Debtor and used only and exclusively as his principal residence, nor does it limit the number or relationship of the persons actually residing within the residential space of the house. The law only limits the type of persons who can file for the exemption to owners and/or legal possessors of a residence, and requires them and/or their families to live in the house while exempt. It does not foreclose any other person from living in the house. Furthermore, the Debtor's tenants are not claiming a homestead in the Debtor's house, nor are they before this Court as debtors in bankruptcy. When analyzed in the context of the economic policies of the law, i.e., regulating the debtor-creditor relationship, the word 'exclusively' is intended to prevent frauds on creditors because it limits the Debtor's choice of principal residence to just one house in one place, and requires the Debtor to actually live in the chosen principal residence, as opposed to living in some other residential property that he may own or rent elsewhere.

14. Thus, despite the Trustee's interpretation, the word 'exclusively' as a deterrent of frauds but not as a nullifier of the laudable policies and protections of the Act. The Homestead Act is an anti-collection statute that strictly forbids the collection of commercial debts by attaching and auctioning off a person's homestead, a remedy that was available prior to 2011 under the previous concept of homestead in Puerto Rico that only exempted a specific amount of money, but not the entire property itself. The legislator sought to balance the equities by establishing that one and only one piece of property can serve as a homestead, *fully* exempt from the reach of debt collectors. Why? In order to avoid a fraud on creditors who could otherwise attach and sell other residential properties of debtors. Under the new law, a person cannot own and claim homestead in his $400,000 estate in the the hills of Cayey, while he actually lives, works and resides most of the time in his $180,000 apartment in Cupey. The legislator knew and understood this potential

7

problem and limited the choice of homestead to that land and structure where you actually live and occupy as your principal residence. indeed. under penalty of criminal sanctions. This measure provides equity and fairness to creditors who saw their collection remedies drastically reduced under this new law. A person cannot shelter superior valuable property from commercial creditors under the guise of homestead, while he does not actually use it as his principal residence—irrespective of any other uses to which he may put the same property.

15. Otherwise, the Homestead Act does not restrict or limit other uses of the property itself, nor does it forbid other people from living in the house. If the Trustee's argument prevails, we must ask: What happens to the homestead exemption in cases where the owner of a residence uses it to hold worship and prayer services on a regular basis? What will happen when the owner provides refuge to homeless persons. without a lease agreement or rent. but receives some money from the beneficiaries to cover expenses? What if the homesteader uses his land and parts of his exempt structure as an animal shelter? What happens to the homestead exemption when the owner uses the house as a foster home for children under the care of the state? This owner will receive significant monetary compensation for housing those children who are not family (they are not adopted). Do these facts concerning realistic, everyday uses of residential property destroy a debtor's right to come to this Court and claim his local homestead exemption? If the Trustee is correct, then we must answer in the affirmative because these other uses contravene the exclusive principal residence restriction apparently contained in the law. But the Trustee's restrictive and unsupported argument cannot prevail because what is not strictly forbidden is considered permissible under the law. i.e. partially renting it, so long as the debtors also live and use the property as their principal residence.

16. In this case, the house is the Debtor's one and only principal residence. He resides in it exclusively. The Debtor did not sub-divide the structure for commercial purposes. He partitioned it into two levels to provide shelter and housing for his family members who often need it. He has consistently used it to house himself and his family. The fact that he occasionally rents out part of the house when it is vacant is of no consequence because by its terms, the Homestead Act enumerates the few, limited circumstances in which the protection for the land and the structure is lost, and renting part of the house is not an exception nor is it forbidden by the Act.

17. In summary, the provisions of the Homestead Act do not speak of or forbid the partial rental of any portion of the structure that serves as the Debtor's principal residence. One cannot see how a creditor or a Chapter 7 Trustee could actually divide, levy or transfer away a portion of this indivisible structure to collect a debt in a state court or in liquidation. In fact, one cannot see how a state court would enforce a judgment over a single structure homestead that is exempt, simply because the owner occasionally uses the structure for other purposes and simultaneously as a principal residence. To find for the Trustee would require this Court to make such an unreasonably literal reading of a singular term in the statute, so as to destroy and leave without effect the clear purpose of the entire law. To find for the Trustee requires the Court to believe that the Homestead Act exists in a historical, legal and factual vacuum, that need not be harmonized and interpreted in accordance with other laws affecting homesteaders' rights such as the various tax codes in Puerto Rico that clearly permit and encourage the use of a person's residence for other uses without diminishing the homestead or tax exemption rights. To deny the exemption, the Court has to blindfold itself to certain undisputable facts, judicial notice of which can be taken, and pretend they do not exist. Such as, for example, that many people own or legally possess more than one piece of residential real property; that many residences in Puerto

Rico consist of more than one dwelling unit within a single structure; that the legislator wanted to avoid a fraud on creditors by multiple property owners who would shelter more valuable property under the Act, despite not residing in them by compelling them to declare exclusively the one residence where they actually live; and that the local legislature was fully aware of these facts when they passed the Homestead Act into law.

18. In fact, section 7 of the Act expressly allows renting the principal residence, without placing restrictions or clarifying whether such rental must occur simultaneously when the homesteader leaves. The Act does not state whether the rental must end immediately upon the homesteaders return. Cases from other bankruptcy courts interpreting similar statutes are abundant and the majority modern trend holds against the Trustee's restrictive view of the Homestead Act. The fundamental public policies underlying the purpose of this new and extraordinary law in present-day Puerto Rico cannot possibly hinge on the interpretation and application of the word "exclusively" in a statute containing thousands of words. Therefore, the Trustee's objection cannot prevail.

LEGAL DISCUSSION

19. The majority of reported bankruptcy cases dealing with the issue of objections to homestead exemptions under state laws where the debtors rent part of their homestead residence favor upholding the Debtor's exemption in this case.

20. The Debtor's research cannot find any reported Puerto Rico cases specifically on point under the facts of this case. However, this Court is bound to enforce the Homestead Act following the legal traditions of the Puerto Rico Supreme Court in cases of statutory interpretation and we pray the Court follows the weight of authority in bankruptcy cases that support the Debtor's claim.

21. Therefore, the preamble to any decision by this federal court on such an important issue necessarily begins by following the rules of statutory construction followed by the state courts. *See, In Re Soto*, 2013 WL 3779382, *3 (Bankr. D.P.R. 2013) ("Homestead exemptions are to be construed liberally on behalf of the homesteader.... A state's rules of construction must be followed by federal courts when construing state-law exemptions. Generally, federal courts must construe all exemption statutes liberally, in the debtor's favor, to reflect their remedial purposes."). (internal citations and quotations omitted)

22. "In Puerto Rico, exemptions are construed in the most liberal light to effectuate the humanitarian purpose of the lawmaker. Laguna v. Quiñones, 23 P.R. R. 358, 360–361, 23 D.P.R. 386, 389 (1916); Marty Pérez v. Ramírez Cuerda, 75 P.R.R. 808, 814, 75 D.P.R. 858, 864 (1954). Questions as to the applicability of a Puerto Rico exemption must be resolved in favor of the exemption. Quintana v. Superior Court, 104 P.R. Off. Trans. Part 1 26, 28, 104 D.P.R. 18, 20 (1975); Marty Pérez v. Ramírez Cuerda, 75 P.R.R. 808, 814, 75 D.P.R. 858, 865 (1954). When interpreting a Puerto Rico statute, its wording cannot be applied mechanically, but by exercising reason. See Pueblo v. Pagan Medina, 99 P.R.R. 731, 737, 99 D.P.R. 753, 759 (1971). Puerto Rico's Supreme Court has refused to follow literal interpretations of a statute if doing leads to an absurd result that is not in accordance with its legislative intent. Pueblo v. Seda Álvarez, 82 D.P.R. 719, 725 (1961); Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735, 756 (1992); Municipio de San Juan v. Banco Gubernamental de Fomento, 140 D.P.R. 873, 884 (1996); Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 549 (1999)." *Id.*

23. With that doctrinal framework in mind, the Court must reject the Trustee's strict textualist approach to the Act. The Court should interpret and apply Section 3 of the Act to do substantial

justice, effectuate the clear remedial purposes of the law, with reason and common sense and in the light most favorable to the Debtor.

24. The Debtor uses the house as his principal residence and a residence for his family and sometimes he temporarily rents the lower level to other people when the same is vacant. Otherwise, the Debtor maintains unfettered control over the property that throughout the years, has served as a place of dwelling for the Debtor and his family members who need shelter and housing. Therefore the issue before this Honorable Court is one of intent. Has the Debtor manifested an intention to abandon the protections of the Homestead Act for any portion of the land and the structure that he maintains as a principal residence? Clearly not. See, *In re McBratney*, 2007 WL 2684072 (Bankr. D. Kansas 2007) *McBratney* is illustrative of the true issue facing this Court and supports finding for the Debtor's claim of full homestead exemption.

25. In *McBratney*, the Bankruptcy Court overruled the Trustee's objection to the Debtor's claim of exemption under Kansas law. The debtor owned a four-plex, a residential structure with four residential units, three of which were rented out to tenants, and one served as the debtor's principal residence. As in this case, the extra units were often used by the debtor to provide housing for his children. Similar to this case, McBratney rented the units on an oral basis, did not commercially advertise the rentals, reported his rental income to the state and was responsible for the maintenance of he premises, taxes and insurance.

26. The Trustee objected to the exemption claiming that the commercial use of the property was pervasive and inconsistent with the homestead purpose of the law, that is, as the debtor's principal residence, therefore only one residential unit occupied by the debtor could be exempted under Kansas law. The court disagreed, holding that "[t]he availability of the homestead exemption is determined on a case-by-case basis by careful examination of the unique facts and

circumstances presented." *McBratney* at *4. The court rejected the Trustee's contention identical to this case based on the use of the property as income producing rental property after finding that the debtor maintained the sole right to use the exterior of the property, subject only to the tenant's right to ingress and egress, that the leases were month to month giving the debtor the power to obtain occupancy of the units on thirty days notice thus negating any intent to abandon the rental units as part of the homestead and that in the past, the debtor's family had occupied a unit rent free. *Id.*

27. The undisputed facts and circumstances of this case are similar to *McBratney* and indeed, more powerful as this case presents only one extra residential unit within the exempted homestead structure. Otherwise, the analysis is nearly identical.

28. *In re McCambry*, 327 B.R. 469 (Bankr. D. Kansas 2005) is a case nearly identical to this case on the facts, and also supports the Debtor's claim of exemption. The McCambrys owned a duplex, a two unit residential property. They occupied one half as their principal residence and rented out the other unit to tenants on a month-to-month basis. They maintained exclusive rights of use, possession and ownership over the entire premises, just like this case, and they had the power to compel surrender of the unit upon 30 days notice, as with this case. Unlike this case, where the Debtor created the other unit with the express purpose of housing and sheltering his children when they need it, the McCambrys bought the duplex with the express intent to rent out the other half as a means of paying for the mortgage and maintenance of the property. *Id.* at 471. Identical to this case, the Chapter 13 Trustee objected to the claim of homestead exemption of the entire duplex under Kansas law based on the existence of the rental of the other half of the property.

29. The bankruptcy court rejected the Trustee's objection and found the entire property exempt emphasizing Kansas law noting that:

13

*"Kansas residents may exempt the full value of the qualified homestead regardless of its actual dollar value. The word "homestead" itself "represents the dwelling house where the family resides." Historically, Kansas courts have liberally interpreted the homestead exemption to effectuate its purpose; namely, "for the benefit of the family and of society—to protect the family from destitution, and society from the danger of her citizens becoming paupers." A property's use as a homestead "must be determined by its occupancy as a residence, a dwelling place, and not as a business house." Any departure from a property's use as a residence for the purposes of business must be incidental to the property's nature as a homestead." Id.* at 472. (internal citations original; footnotes omitted)

30. Finding that the debtors held exclusive control and possession of the homestead premises and its appurtenant uses, were in charge of maintenance, taxes and upkeep of the grounds, could compel surrender of the premises in just 30 days notice and that their use of the property for limited rental income was not inconsistent with the characteristics of a homestead, i.e., a principal dwelling place for the family, the court overruled the Trustee's objection, reasoning that:

*"In order to reach a conclusion that a part or portion of a homestead has been excluded therefrom and has lost its right of exemption from execution as a homestead, the renting of it for a particular purpose and the surrounding circumstances should show an intention to abandon it as a homestead, and the use to which it was put in connection with the rest of the premises should be inconsistent with the homestead character of the premises." Id.* at 475. (footnotes omitted)

31. Once again, the facts of this case clearly show that the Debtor has not abandoned or intends to abandon the homestead character of his principal residence. Both *McCambry* and *McBratney* are modern seminal cases and both reject what is perhaps the only reported Circuit case decision

uncovered by the Debtor's research that could be adverse to Debtor's position. *See, Belcher v. Turner (In re Belcher)*, 579 F.2d 73 (10th Cir.1978). In *Belcher*, the Tenth Circuit rejected a debtor's contention that he could overcome a Trustee's objection to a claim of homestead exemption by raising a single argument that the different dwelling unites were part of the same indivisible physical structure and therefore, must be deemed entirely exempt. Without addressing the merits of the controversy, the Circuit Court declined to establish a *per se* rule that a legal argument based on a single factor alone was sufficient to overcome an objection. Importantly, *Belcher* has been generally restricted by the federal courts to its limited ruling concerning the same physical structure argument, and has not been followed within the Circuit, as shown in the two Kansas bankruptcy decisions discussed above.

32. The weight of authority holds that under the facts of this case, the Debtor's indivisible homestead is fully exempt and does not contravene the provisions of Section 3 of the Homestead Act. *See, e.g. In In re McCarthy*, 2011 WL 5833869 (Bankr. N.D.N.Y. 2011) (Rejecting a creditor's objection to full value of homestead exemption under New York law claimed by debtor over lot of land with two-family structure rented out to third parties and smaller residential structure used by the debtor as her residence and place of business after holding that New York's homestead law requirement that the debtor use the property as his principle place of residence does not require that the property be exclusively occupied by the debtor exclusively as a principal residence); *In re Vizentinis*, 175 B.R. 824 (Bankr.E.D.N.Y.1994) (same) (Overruling a judicial lien holder's objection to full claim of homestead exemption under New York law claimed by debtor over four apartment structure on a lot of land owned by debtor and entirely avoiding the creditor's judicial lien for impairment of exemptions where the debtor rented out three apartments and used one as a principal residence); *In re Rupp*, 415 B.R. 72

(Bankr.W.D.N.Y.2008) (Overruling the Trustee's objection after finding that a debtor who owned a two-family house could claim a homestead exemption in the entire home, despite the fact that she lived in only one part and rented out the other part); *In re Brizida*, 276 B.R. 216 (Bankr. D. Mass 2002) (Overruling the Trustee's objection to homestead exemption under Massachusetts law claimed by debtor over three family home rented to others and one unit used by debtor as her principal residence, after emphasizing the important public policy of protection families and preventing debtors from becoming public charges by allowing them to exploit parts of the homestead for income purposes); *In re Shell*, 295 B.R. 129 (Bankr.D.Alaska 2003) (Debtor could exempt a six-unit apartment as a homestead when he occupied one unit and rented out the other five, reasoning that the legislative history demonstrated that the homestead is designed to both provide a place to reside and keep the debtor from seeking public assistance, and that this latter goal was advanced by including in the homestead income-producing property).

33. Many more bankruptcy cases support the Debtor's claimed exemption. The Court should be especially persuaded under the facts of this case to follow the reasoning in cases like *Brizida* and *Shell*, where as here, the public policies of preserving families from homelessness and destitute poverty can be advanced by interpreting the law to include income-producing property within the homestead. This is harmonious as stated with other tax laws and codes of this jurisdiction. It is also specifically contemplated in Section 7 of the Homestead Act that expressly allows homesteaders to rent the property.

34. A review of Section 7 necessarily creates several lagoons. For example, when can the tenant enter the debtor's residence, before, simultaneously or after the owner leaves? Likewise, when does the tenancy under Section 7 end? Upon the owner's return, after notice and a reasonable

time to vacate? Fortunately, the Court need not answer these queries, because the law allows renting the principal residence and the inference should be extended under the present facts. Finally, this Court and reasonable persons cannot conclude that Section 7 providing for rental of the principal residence was drafted only and exclusively thinking of a single-unit residence. Simply put, that is an absurd conclusion given the reality that many residences in Puerto Rico contain more than one dwelling unit.

35. Finally, and fortunately, the Court is not completely without local authority to find for Debtor. In October 2013, the Puerto Rico Supreme Court ("PRSC") issued an opinion interpreting and applying the provisions of the new Homestead Act. *See, Rivera Garcia vs. Registrar of Property*, 2013 TSPR 107 (2013). The issue concerned Section 9 of the Homestead Act and is not directly relevant to the instant contested matter. However, what is relevant is the manner in which the entire Court interpreted and applied the otherwise straightforward provisions of the statute in question.

36. In *Rivera Garcia* a widow whose property was registered in the name of all the heirs tried to file for homestead. Although the letter of Section 3 requires than an 'individual', a single person, apply for homestead, the Registrar refused because not all of the co-owners appeared in the notarized document required under Section 9. On appeal to the PRSC, the majority construed this statutory ambiguity to deny the widow's claim of homestead after finding that all of the co-owners were required to notarize the homestead petition, regardless of their interest in the property. The Court went beyond the text of the Act to apply doctrines of community property developed under the Civil Code in order to deny the widow's appeal. The Court ruled that the widow could not asset her homestead claim unless and until all of the co-owners of record appeared with her, without regard for the fact that registering the widow's property could destroy

the other co-owners' rights to their separate homestead exemptions over their principal residences. The concurring judge. the Hon. Rodriguez Rodriguez unambiguously found that the Act has certain 'lagoons' that the legislature needs to address. The dissenting opinion by the Hon. Hernandez Denton is more revealing. The Judge explained that every person is allowed to have one, but only one homestead, subject to criminal sanctions. This is consistent with the Debtor's position that "exclusively" in Section 3 serves as a statute of frauds, to prevent owners from picking and choosing between properties that they actually do not use as a principal residence. Hernandez Denton also emphasized that the homestead legal tradition in Puerto Rico incorporates equity as part of the affirmative grant of rights under the law. Analyzing the history of homestead in Puerto Rico, the dissent cites authority for the proposition that the "exclusive possession" of the property by the homesteader is not a prerequisite to a claim of homestead. *Rivera Garcia*, Dissent, Part II.

37. *Rivera Garcia* reiterates and reinforces the doctrine that the Homestead Act must be analyzed and implemented by courts in accordance with the fundamental public policies contained in its provisions and the liberal doctrines of statutory interpretation followed by the state courts, and not by strict adherence to the statutory language or singular words, as pressed by the Trustee.[4]

38. Finally, this Court need not shy away from actively, liberally and fairly affording and extending the protections of the Homestead Act to debtors when faced with statutory ambiguities or inconsistencies as in this case between the language and the clear purposes and policies imbued in the law.

---

[4] For an excellent overview of the entire history of the homestead laws of Puerto Rico, their effects, policies and the development of their liberal, extensive and expansive application by the courts of Puerto Rico, see, H. Serrano Mangual, *El Hogar Seguro En El Derecho Puertorriqueno*, Revista del Colegio de Abogados de Puerto Rico, San Juan, Vol. 68 abril-junio 2007, pg. 323-349. The article summarizes at pg. 343 by stating that, notwithstanding the existence of clearly spelled-out laws, when interpreting homestead laws, equity shall always be present causing a customary departure from the principle of following and enforcing the clear text of the law.

39. In the case of *In Re Viviana Pérez Hernández*, Bkcy. # 11-09608-ESL, this Court held against extending the protections of the Act in favor of debtors. The case dealt with a conflict inherent in Section 4 concerning the exceptions to the Act when the homesteader filed for bankruptcy. The Court sided with the Trustee based on the apparent clarity and meaning of the statute. The local legislature acted swiftly and decisively to correct the record and protect debtors by amending section 4. (See Law 257-2012 of September 15, 2012) Therefore, this Court can and should feel free to act as its conscience, common sense and public policy dictate in favor of liberally construing the protections of the Act in favor of the Debtor in the certainty that the local legislature is not shy about moving swiftly to clarify the law, if needed.

40. In conclusion, the issue before the Court is one of statutory interpretation, harmonizing the law with its express purposes and public policies, common sense, equity and reason. *In re Soto, supra.* The standard that the Trustee must meet is to show that the Debtor abandoned the homestead character of his property. *In re McBratney, supra.* Clearly, the objection fails to meet the standard. To find for the Trustee, the Court will have to legislate restrictions into the Homestead Act that defy its text, logic, equity and common sense. Namely, that: 1) homesteaders cannot resister any property with a structure that has more than a single residential dwelling unit; 2) homesteaders are forbidden to use their homestead for any other practical and sensible purposes, except exclusively as a residence in which to live, sleep and die in; and, 3) it is strictly forbidden for any other persons to dwell within the residential structure, except the owner and his family. Clearly, that is not what the legislature had in mind; that is not what the weight of authority holds, nor is it found anywhere in the Act or in the history of homestead law in Puerto Rico. Therefore, the Trustee's objection must be overruled.

41. For all the foregoing reasons, the Debtor pleads and prays that the Court, 1) overrule the Trustee's objection to exemptions, and 2) allow the Debtor's full homestead exemption and set the case for plan confirmation.

RESPECTFULLY SUBMITTED in Arecibo, Puerto Rico, this 27th day of November, 2013.

By: _/s Edwin Matos Maldonado_
EDWIN MATOS MALDONADO
USDC 226403
FELIX M ZENO GLORO
USDC 124212
LIAVANESSA FONTANEZ RUIZ
USDC 213707
PO BOX 1945 ARECIBO P.R. 00613
TEL: 787-879-1760; FAX: 880-2756
tribunal@zenogloro.com

**13-05391-MCF13** ANTONIO OTERO NAZARIO
**Case type:** bk **Chapter:** 13 **Asset:** Yes **Vol:** v **US BANKRUPTCY JUDGE:** MILDRED CABAN FLORES
**Date filed:** 06/28/2013 **Date of last filing:** 11/23/2013

# Creditors

**CitiFinancial, Inc**
PO Box 70919
Charlotte, NC 28272-0923

(3757661)
(cr)

**CITIFINANCIAL PLUS**
CITIFINANCIAL/ATTN: BANKRUPTCY DEPARTMEN

PO BOX 140069
IRVING, TX 75014

(3746778)
(cr)

**CITIFINANCIAL PLUS**
300 SAINT PAUL PL
BALTIMORE, MD 21202

(3746777)
(cr)

**COOP A/C MANATI**
PO BOX 30562
MANATI, PR 00674-8516

(3746779)
(cr)

**GE Capital Retail Bank**
c/o Recovery Management Systems Corp
25 SE 2nd Ave Suite 1120
Miami FL 33131-1605

(3809937)
(cr)

**GECRB/WALMART**
ATTN: BANKRUPTCY
PO BOX 103104
ROSWELL, GA 30076

(3746781)
(cr)

**GECRB/WALMART**
PO BOX 965024
ORLANDO, FL 32896

(3746780)
(cr)

**MONEY EXPRESS**
CONSUMER SERVICE CENTER
BANKRUPTCY DIVISION (CODE 248)
PO BOX 9146
SAN JUAN P R 00908-0146

(3753035)
(cr)

**PRESTAMAS**
POB 11890
SAN JUAN, PR 00922

(3746782)
(cr)

**SANTANDER FINANCIAL**
POB 71504
SAN JUAN, PR 00936

(3746783)
(cr)

**SANTANDER FINANCIAL D/B/A ISLAND FINANCE**

PO BOX 195369
SAN JUAN PR 00919-5369

(3749981)
(cr)

| PACER Service Center |
| --- |
| |

| Transaction Receipt | | | |
|---|---|---|---|
| 11/27/2013 13:48:42 | | | |
| PACER Login: | fz0002 | Client Code: | |
| Description: | Creditor List | Search Criteria: | 13-05391-MCF13 Creditor Type: All |
| Billable Pages: | 1 | Cost: | 0.10 |