IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | : |
| ANTONIO OTERO NAZARIO | : CASE NO. 13-05391-MCF |
| | : CHAPTER 13 |
| Debtor | : |
| _____ | : |

DEBTOR'S REJOINDER IN OPPOSITION
TO TRUSTEE'S OBJECTION TO EXEMPTIONS

COMES NOW, the Debtor in the above-captioned case, acting through counsel and very respectfully files the following Rejoinder to the Trustee's Sur-reply to Debtor's memo of law concerning the Trustee's objection to the Debtor's claim of homestead exemption under Puerto Rico Law 195. (Dkt. 38, "Sur-reply") For the reasons that follow the Trustee's objection to the homestead exemption must be overruled. Debtor incorporates and reiterates the entire content of Debtor's Response (Dkt. 30) and assumes familiarity with all abbreviations and acronyms used therein.

SUMMARY AND HISTORY OF THE CASE:

As previously stated in Debtor's Reponse, the perfunctory and mechanical application of the meaning of the word "exclusively" cannot become the basis for the Court's decision on the true scope, operation and application of the fundamental social and economic policies of the new Puerto Rico Homestead Act contained in Law 195 of 2011.

The substantive facts of the case are as follows: Debtor converted his house into two levels for the purpose of providing housing to his family; Debtor lives upstairs and sometimes rents the lower-level on a verbal, month-to-month basis; tenants are limited to accessing the property for use as their dwelling place; Debtor is responsible for maintenance and all legal matters, such as taxes; tenants are subject to

1

termination and ouster from the property on 30-day's notice; and Debtor fully expects to shelter his family in the future during periods of hardship.

Licenciado Alejandro Oliveras Rivera, Chapter 13 Trustee, filed an objection and memo of law opposing the Debtor's homestead exemption under the Homestead Act because of the partial rental. (Dkt. 12, 21) Upon Debtor's Response, the Trustee filed a Sur-reply rhetorically but not substantively refuting Debtor's practical and common sense arguments in support of his exemption. The Trustee's objection relies solely upon the following provisions of the Act: "*Every individual or head of household domiciled in Puerto Rico shall have the right to possess and enjoy, under the concept of homestead, a farm consisting of a parcel of land and a structure located thereon, [...] that he owns or legally possesses, and that is occupied by him or his family **exclusively** as a principal residence*". (*Homestead Act, Section 3*) (bold supplied).

The Trustee says that "exclusively" as used in Section 3 invalidates the sea change of homestead policy and the new protections afforded homesteaders under the Act. In support, the Trustee cites only a partial definition of the word "**exclusive**" provided by the Merriam Webster online dictionary.[1] The Trustee argues that the statute is clear and unambiguous and urges the literal application of "exclusively" to obliterate the equitable policies under the Act. (Sur-reply pp. 4-8 §§ 6-10) Transfixed by the term "exclusively", the Trustee's argument disregards simple equity and common sense, the history and evolution of the homestead protections under Puerto Rico Supreme Court precedents, state

---

[1] But see Attachment 1, the full Merriam Webster definition for "exclusive" with all its variable uses, meanings and related words. Note that "exclusive" is not part of the statute, but the term can also mean *single*, as in a single homestead, *sole*, as in the one and only homestead, *excluding*, as in unable to maintain or occupy other residences while declaring another as your homestead. Other definitions and uses supportive of Debtor's position are available, i.e., *see* http://www.thefreedictionary.com/exclusively. As stated in Debtor's Response, however, this important policy matter must not be diminished into the battle of the online grammarians.

2

laws allowing homestead rental, Section 7 of the Act and Section 4 that specifically lists the grounds for abandonment without including renting.

The Debtor's position is that there is vagueness and ambiguity between the statutory purpose and its text as concerns the use of the word "exclusively", but there is no ambiguity in the historically important policies underlying the statute which must be enforced to benefit homesteaders. The Act's revolutionary *in rem* right of protection attaches to the estate itself and protects it from attachment and forced sale by general creditors with few exceptions. Previously, the only right protected was a sum of money akin to federal exemptions in bankruptcy. Law 195 protects Puerto Rico's most basic institution, the family, from the social, economic and emotional trauma of losing its home to general creditors. *Homestead Act, Statement of Motives, pgs. 1-2*. Therefore, "exclusively" can be interpreted as limiting the homestead claim or registration to a single property—by excluding other properties owned by homesteaders. Otherwise, the Homestead Act does not forbid other uses for the Debtor's property.

DISCUSSION

The homestead defense can be raised in cases where the estate is not registered or cannot be registered in the public records. Therefore, a plausible function of 'exclusively' serves as a statute of frauds to reinforce notice of the Act's criminal sanctions for registering or *de facto* keeping more than a single homestead at a time. The Trustee disagrees, stating that such statutes require writings and then launches into a "brief review" of the "evolution of our homestead law" by citing one isolated bankruptcy case in a footnote. (Sur-reply pp. 8-11 §§ 11-19)[2] The fact remains that the homestead requires a written instrument filed with the public registry or a sworn declaration. Coupled with the Law's reference to

---

[2] Prior homestead laws did not require public recordation. Given that the homestead defense can be raised even where the estate itself is not registered, we can expect that the homestead exemption will eventually be challenged by creditors on *de facto* grounds against homesteaders who actually live in one estate, but purport to claim a more valuable estate as a homestead.

3

criminal sanctions, the word 'exclusively' limits the principle residence to a single property actually occupied and excludes other residences we may own to avoid fraud on creditors.[3]

Law 195 prompts us to consider Texas and Florida law as guideposts to its application but the Trustee avoids Texas law, dismissing it with a terse comment that it is less restrictive than Florida law. (Id. pp. 13 §22) There are no state court precedents applicable to this controversy, thus Debtor reiterates his statement of the law in his Response at pp. 11-16. However, let us join the Trustee and review Texas and Florida law to see how this Court should rule on the instant matter.

First, we start with the proposition that "[e]xemptions should be liberally construed in favor of the debtor." *In re Brown*, 391 B.R. 210, *5 (6th Cir BAP 2008) (unpublished opinion) It is well established that when the legislator's intent is ambiguous, exemptions should be liberally interpreted in favor of the Debtor. *Id.* "[I]f it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." *Id.* citing *In re Martinez–Whitford*, 199 B.R. 74, 77 (Bankr.D.Mass.1996). The party objecting to an exemption has the burden of proving that the property claimed by the debtor should not be exempted. *Id.* citing Fed. R. Bankr.P. 4003(c). The Court must follow the principle that any ambiguities found in state exemption laws must be resolved in favor of debtors. *In re Nelson*, 178 B.R. 811 (Bankr. W.D. Virg.1994) (citations omitted); *see also, In Re Soto*, 2013 WL 3779382, *3 (Bankr. D.P.R. 2013) (Noting that the Puerto Rico Supreme Court has refused to follow the literal interpretations of a statute if doing so leads to an absurd result not in accordance with its legislative intent).

The standard uniformly applied to objections to homestead exemptions is that of 'abandonment'. (See Debtor's Reponse at pp. 12-16). *See, also, In re Laing*, 242 B.R. 538 (Bankr. S.D. Fla. 1999) (rejecting abandonment of homestead despite debtor residing in property purchased in girlfriend's name

---

[3] See Debtor's Response, pp. 18 fn 4. For a truly substantive review of the history of the homestead laws of Puerto Rico and the development of their liberal application by the courts of Puerto Rico see, H. Serrano Mangual, *El Hogar Seguro En El Derecho Puertorriqueno*, Revista del Colegio de Abogados de Puerto Rico, San Juan, Vol. 68 abril-junio 2007, pg. 323-349.

and that debtor rented the homestead residence); *In re McDonald*, 486 B.R. 843 (Bankr. S.D. Tex. 2013) (debtor's continuous absence from property did not constitute abandonment of her Texas homestead).

Under Texas law, a right of homestead is established by showing overt acts of homestead usage and an intention to claim the estate as a homestead, regardless of actual occupancy by the debtor. "Once the claimant has made a *prima facie* case in favor of homestead status, the objecting party has the burden of demonstrating that the homestead rights have been terminated." *Graham v. Kleb*, 2008 WL 243669, *2 (S.D. Tex. 2008) (citing Bankr. Rule 4003(c); other citations omitted). Abandonment must be established by "undeniably clear" evidence that the homestead has been abandoned with no intent to reclaim it. *In re Napier*, 144 B.R. 719, 723 (Bankr. W.D. Tex. 1992)

In Florida, "[i]t is settled law in Florida that the constitutional homestead exemption "should be liberally construed in favor of the party claiming the exemption and that the exemption's purpose is to protect and foster the family home." *In re Goode,* 146 B.R. 860, 862 (Bankr.M.D.Fla.1992). "Thus, the burden is on the objecting party to make a strong showing that the claimant is not entitled to the claimed exemption." *Id.* "The homestead exemption should be liberally construed to effectuate its remedial purpose, but at the same time, the Court must take care to prevent it from becoming an instrument of fraud." *In re Bratty,* 202 B.R. 1008 (Bankr.S.D.Fla.1996) (citing *Croker v. Croker,* 51 F.2d 11 (5th Cir.1931)). "Once property is imbued with homestead status, it remains homestead until it is abandoned." *In re Frederick,* 183 B.R. 968, 971 (Bankr.M.D.Fla.1995). […] A homestead is abandoned when it no longer serves as the owner's "bona fide home and place of permanent [residence]".'

*In re Lloyd,* 394 B.R. 605, 611 (Bankr. M.D.Fla 2008) (internal citations and quotations original)

Applying the "strong showing" evidentiary standard under Florida law (*Lloyd,* 397 B.R. *supra* at 611), or the "undeniably clear" standard under Texas law (*Napier,* 144 B.R. *supra* at 723), it is undisputed that the Debtor is both using his house as his homestead and has filed for homestead

protection under local law. Therefore, the burden shifted to the Trustee to overcome the exemption and he failed. In three separate memoranda filed in support of his objection, the Trustee did not address the applicable abandonment standard or his burden of proof, arguing instead that exclusively means exclusively and nothing else is to be said about Homestead Act's history, legislative purpose, social policy, state rules of statutory interpretation under homestead cases, equity and common sense in this dispute. Obviously, he cannot meet the burden and the objection should be overruled.

The Trustee argues that Texas law is more permissive in allowing other uses for the homestead but claims that Florida law is more restrictive. (Sur-reply pp. 13, §§22-23) That analysis is incorrect. An important majority of reported cases from both states go beyond the texts of the homestead laws to extend their protections as far as equity, justice and common sense will allow. Both states have a long and liberal tradition of upholding homestead exemptions in the face of debtors using their properties for rental and other economic purposes.[4] Clearly, the local legislator was aware of this legal tradition, thus Law 195 points to Texas and Florida law for guidance. The Trustee relies on *In re Veguilla*, 13-03701-ESL (Bankr.D.P.R. 2014) to support his objection because it incorporates the leading homestead exemption case under Florida law dealing with the issue at hand, *In re Englander*, 156 B.R. 852 (Bankr. M.D.Fla. 1992), *affirmed*, 95 F.3d 1028 (11th Cir. 1996). *Englander* is inapposite.

First, *Veguilla* is not binding on this Court though Debtor recognizes its persuasive value. Nevertheless, *Veguilla* misapplies the holding in *Englander* on the specific issue at hand, Debtor's partial rental of his homestead, instead incorporating *Englander's* remedial aspects based on facts and Florida constitutional and other legal provisions that are not applicable to this matter.

*Englander* is on point with the issues in this matter only as it concerns the partial rental of the homestead property. The debtors rented an apartment in the upper portion of their garage. Faced with an

---

[4] For example, a West Law search of the terms "homestead, "objection" and "abandon" pulled up over 60 cases from Florida and Texas, the overwhelming majority of which support the Debtor's position in the context of renting or other limited commercial uses of the homestead property.

6

objection on account of renting the garage apartment, the bankruptcy court analyzed the Florida Constitution and applicable case law and concluded that the "elimination of the business property reference from Article X, § 4 [Florida Constitution] shows unequivocal intent to limit homestead exemptions to the residence of the owner and to disallow any claim for an exemption that exceeds the residence of the owner." *Englander* at 865. (citations and quotations omitted)[5] Thus, confronted with the exact issue before this Court and notwithstanding the occupancy restriction in the constitutional provision and evidence of clear legislative purpose against the commercial uses of homesteads, *Englander* fully upheld the debtors' exemption, holding: "This Court adopts the "Facts and Circumstances" analysis of *Rodriguez, Aliotta, Cowdery, McEwen,* and *Glunt,* and finds that the garage apartment was built on homestead property for utility purposes and not rental purposes. The Court holds that hard and fast tests for determining homestead exemptions proposed by other Courts do not take into account the unique factual circumstances which necessarily arise in every homestead claim." *Id.* at 867.

The holding in *Englander* on the issue of the disputed claim of exemption unqualifiedly supports the Debtor's position that, notwithstanding the ambiguity created by the word "exclusively" in the Act, renting a part of his home to sustain the family (and the chapter 13 plan) is not evidence of abandonment of the homestead protection. That is the only aspect of *Englander* applicable to this dispute and that's what the Trustee overlooks in his Sur-reply, as did the Veguilla Court in its decision. This Court should not eviscerate Law 195 by misapplying Florida law that our legislature took notice of when it decided not to include partial rental as grounds for abandonment of the homestead in Section 4 of the Act.

---

[5] The Florida Constitution provides that "[T]here shall be exempt from forced sale under process of any court ... (1) a homestead, ... if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption **shall be limited to the residence of the owner or his family....**" FLA. CONST. art. X § 4 (1968) (emphasis supplied). Thus, Florida's homestead law is not unlike Law 195's purported limitation by use of the word "exclusively. Yet the Trustee admits that notwithstanding this restriction, Florida law allows courts to inquire and grant the exemption even when the property is used for other purposes. (Sur-reply pp.15 § 27)

The remainder or "remedial" aspect of the *Englander* decision rested on findings that are irrelevant to this dispute regarding the debtors' actual bad faith and dishonesty in disclosing the actual size of their lot, which exceeded Florida's ½ acre limitation for municipal homesteads. Ironically, despite the debtors' dishonesty in *Englander*, the creditors would only receive the proceeds of the un-exempt portion of the lot, but not the value of the rented portion or the rent money.

The Trustee failed to refute Debtor's common sense arguments supporting Debtor's view that the word "exclusively" only serves to limit debtors to declaring a single homestead given that the CRIM and IVU codes permit use of a principal residence for rental purposes without destroying the properties' CRIM tax exemption or the Homestead Act's protection. These laws were known to the legislator who enacted Law 195, yet nothing is said in Section 4 setting forth the *only* legal basis to abandon or forfeit the protections of the Act. The Court may infer that the legislature took for granted the partial rental uses given to homesteads.[6] To penalize the over-burdened debtors by stripping off the homestead exemption in addition to the tax penalties they must pay for permissible rental activity amounts to a taking without due process and flies in the face of justice.

The Trustee's rejects the plausible scenarios that will face this Court under the local Homestead Act as seeking "advisory opinions". (Sur-reply pp. 19-20 §37). Frankly, without primary jurisdiction over an issue of first impression under a new state law, any bankruptcy court decision is in a sense, advisory.[7]

---

[6] For example, there is an entire industry of renting rooms and apartments in private households to students in the neighborhoods that surround our major college campuses in Puerto Rico. This industry is heavily regulated by several state agencies. Notice must be taken that many of these residences are the private homesteads of their owners who also live in them. Does Law 195 forbid this industry? Obviously not. The legislator took for granted that people sometimes rent all or part of their homestead for many reasons. Thus, the Act is silent on permissible ordinary rental activity that should be common knowledge. That is all this Court needs to find to hold for Debtor.

[7] This Court should follow *Rivera Garcia vs. Registrar of Property*, 2013 TSPR 107 (2013) where the PRSC ignored Section 3 of the Act which only requires that "an individual" apply for homestead because not all of the heirs to the property appeared in the notarized document required under Section 9. The PRSC found statutory ambiguity and incorporated equitable doctrines to extend the protections of the Act to the co-heirs. The concurring opinion states that the Homestead Act has certain 'lagoons' that the legislature must address. The dissent stressed that every person is allowed to have only one claim of homestead subject to criminal sanctions, emphasizing that the homestead legal tradition in Puerto Rico incorporates equity as part of the affirmative grant of rights under the law and cited authority for the proposition that the "exclusive possession" of the property by the homesteader is not a prerequisite to a claim of homestead.

So, we ask again: If a debtor from Hatillo files a petition disclosing that he allows a local dairy farmer's cattle to graze on his land in exchange for money, is the presence of cattle grazing on the debtor's property proof of abandonment of the homestead protection? The Court must not adopt "hard and fast tests for determining homestead exemptions... that do not take into account the unique factual circumstances which necessarily arise in every homestead claim." *Englander*, 156 B.R. *supra* at 867. Yet, "hard and fast" injustice and inequity will be the result of adopting the Trustee's view.

In summary, the Debtor's interpretation of the function of the word "exclusively" in Section 3 of the Homestead Act is plausible and sensible in view of the stated policies and protections intended under the Act. The Act's reference to criminal sanctions is reinforced by the use of "exclusively", because the homestead defense to creditors can be raised even over property that is not subject to public deeds and recordation. The Act seeks to balance debtor protections with the rights of creditors by strictly reinforcing that debtors must not register and/or *de facto* keep more than one homestead, despite having other residential properties. A simple finding of ambiguity as concerns the issue of renting the homestead either in the ordinary course, as in this dispute, or under specific circumstances under Section 7 will suffice to enforce the protections of Act fully for Debtor, as required by doctrine and standards applied in federal and state courts in such circumstances. Consistent with Debtor's numerical limitation argument for "exclusively", Section 7 allows for the indefinite rental of the homestead on just one condition: That the person does not obtain or declare a homestead elsewhere. The PRSC in *In re Rivera Garcia*, f/n 7 *supra*, already held that the Act is ambiguous and contains many "lagoons" that must be addressed by the legislature in due course. The issue regarding partial rental is one such "lagoon". To uphold the Trustee's literal reading of a singular term in the statute is to destroy the clear purpose of the entire Act by subscribing to the extreme theory that just one word cast the entire Law into a historical, legal, social and factual vacuum, that need not be harmonized and interpreted in accordance with other

laws affecting homesteaders' rights that clearly permit other uses for a person's residence. The Court must not blindfold itself to certain undisputable facts that the local legislature was fully aware of such as multiple homeownership in Puerto Rico and the legislator's efforts to avoid a fraud on creditors by compelling debtors to declare and inhabit a sole homestead.

In conclusion, the issue before the Court is one of statutory interpretation, harmonizing the letter of law with its express purposes and public policies, common sense, equity and reason to see if the homestead was abandoned. The Homestead Act must be construed by reference to the state law tradition of expanding homestead rights in the face of ambiguity and inequity. If the exemption can be interpreted in a way that benefits debtors, the Court should adopt that interpretation. Under any analysis, the Trustee failed to demonstrate Debtor's abandonment of the homestead character of any portion of his property.

THEREFORE, for all the foregoing reasons, the Debtor pleads and prays that the Court, 1) overrule the Trustee's objection to the homestead exemption, and 2) allow the Debtor's full homestead exemption and set the case for plan confirmation.

RESPECTFULLY SUBMITTED in Arecibo, Puerto Rico, this 1st day of May, 2014.

By: */s Edwin Matos Maldonado*
EDWIN MATOS MALDONADO
USDC 226403
FELIX M ZENO GLORO
USDC 124212
LIAVANESSA FONTANEZ RUIZ
USDC 213707
PO BOX 1945 ARECIBO P.R. 00613
TEL: 787-879-1760; FAX: 880-2756
tribunal@zenogloro.com

## ATTACHMENT 1: FULL DEFINITION OF 'EXCLUSIVE'

: not shared : available to only one person or group

: only allowing in people from a high social class

: available to only a few people because of high cost

**Full Definition of EXCLUSIVE**

**1**
**a :** excluding or having power to exclude
**b :** limiting or limited to possession, control, or use by a single individual or group

**2**
**a :** excluding others from participation
**b :** snobbishly aloof

**3**
**a :** accepting or soliciting only a socially restricted patronage (as of the upper class)
**b :** STYLISH, FASHIONABLE
**c :** restricted in distribution, use, or appeal because of expense

**4**
**a :** SINGLE, SOLE <*exclusive* jurisdiction>
**b :** WHOLE, UNDIVIDED <his *exclusive* attention>

— **ex·clu·sive·ly** *adverb*
— **ex·clu·sive·ness** *noun*

See exclusive defined for English-language learners »
See exclusive defined for kids »

**Examples of EXCLUSIVE**

1. He belongs to an *exclusive* club.
2. She attended an *exclusive* private school.
3. one of the city's most *exclusive* restaurants
4. They gave their *exclusive* attention to the job.

**First Known Use of EXCLUSIVE**

1515

**Related to EXCLUSIVE**

Synonyms
    sole, single, unshared

*http://www.merriam-webster.com/dictionary/exclusively*

**13-05391-MCF13** ANTONIO OTERO NAZARIO
Case type: bk Chapter: 13 Asset: Yes Vol: v US BANKRUPTCY JUDGE: MILDRED CABAN FLORES
Date filed: 06/28/2013 Date of last filing: 05/01/2014

# Creditors

| Creditor | ID |
|---|---|
| **CitiFinancial, Inc**<br>PO Box 70919<br>Charlotte, NC 28272-0923 | (3757661)<br>(cr) |
| **Antio, LLC**<br>c/o Weinstein & Riley, P.S.<br>2001 Western Ave., Ste. 400<br>Seattle, WA 98121 | (3890621)<br>(cr) |
| **CITIFINANCIAL PLUS**<br>300 SAINT PAUL PL<br>BALTIMORE, MD 21202 | (3746777)<br>(cr) |
| **CITIFINANCIAL PLUS**<br>CITIFINANCIAL/ATTN: BANKRUPTCY DEPARTMEN<br>PO BOX 140069<br>IRVING, TX 75014 | (3746778)<br>(cr) |
| **COOP A/C MANATI**<br>PO BOX 30562<br>MANATI, PR 00674-8516 | (3746779)<br>(cr) |
| **GE Capital Retail Bank**<br>c/o Recovery Management Systems Corp<br>25 SE 2nd Ave Suite 1120<br>Miami FL 33131-1605 | (3809937)<br>(cr) |
| **GECRB/WALMART**<br>ATTN: BANKRUPTCY<br>PO BOX 103104<br>ROSWELL, GA 30076 | (3746781)<br>(cr) |
| **GECRB/WALMART**<br>PO BOX 965024<br>ORLANDO, FL 32896 | (3746780)<br>(cr) |
| **MONEY EXPRESS**<br>CONSUMER SERVICE CENTER<br>BANKRUPTCY DIVISION (CODE 248)<br>PO BOX 9146<br>SAN JUAN P R 00908-0146 | (3753035)<br>(cr) |
| **PRESTAMAS**<br>POB 11890<br>SAN JUAN, PR 00922 | (3746782)<br>(cr) |
| **SANTANDER FINANCIAL**<br>POB 71504<br>SAN JUAN, PR 00936 | (3746783)<br>(cr) |
| **SANTANDER FINANCIAL D/B/A ISLAND FINANCE**<br>PO BOX 195369 | (3749981)<br>(cr) |

SAN JUAN PR 00919-5369

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 05/01/2014 15:23:11 | | | |
| PACER Login: | fz0002 | Client Code: | |
| Description: | Creditor List | Search Criteria: | 13-05391-MCF13 Creditor Type: All |
| Billable Pages: | 1 | Cost: | 0.10 |