IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF PUERTO RICO

| IN RE: | : | |
|---|---|---|
| ANTONIO OTERO NAZARIO | : | CASE NO. 13-05391-MCF |
| | : | CHAPTER 13 |
| Debtor | : | |

DEBTOR'S MEMORANDUM IN COMPLIANCE WITH ORDER

COMES NOW, the Debtor in the above-captioned case, acting through counsel and very respectfully files the following Memorandum In Compliance With Order, per order at docket 57 in support of his claim of homestead exemption under Puerto Rico Law 195. Debtor incorporates by reference Debtor's Response (Dkt. 30), Debtor's Rejoinder (Dkt. 48) and counsel's arguments expressed at oral argument. (Dkt. 56, minutes) and assumes the reader is familiar with all abbreviations, acronyms and references employed by Debtor throughout this litigation. For the reasons that follow the Trustee's objection to the must be overruled and Debtor's homestead exemption granted unimpaired.

SUMMARY AND HISTORY OF THE CASE:

1. This controversy is over a year old. At oral argument (Dkt. 56), the parties expressly and unambiguously stated that there is no factual dispute whatsoever in the case.

2. The substantive facts of the case are as follows:[1] Debtor owns a bi-level residential structure that he occupies as his exclusive principal residence and is currently using the upper-level as his dwelling place.[2] He refurbished the lower-level of the house to provide housing for his family and, from time to time when the family is absent, he rents the lower-level on a verbal, month-to-

---

[1] See Debtor's Response, Dkt. 30, pg 1-2; Debtor's Rejoinder, Dkt. 48, pg. 1-2.
[2] At different places in his papers the Trustee suggests that the house is not the Debtor's principal residence. That is incorrect and the fact of principal residency was stipulated at oral argument. The Trustee's objection is that Debtor's house lost its homestead protection because he partially rents it, allegedly in violation of Section 3 of the statute.

1

month basis to other people. As has been the history of this residence, Debtor expects to shelter his family in the future on an as-needed basis. The lower-level was rented on the petition date.

3. The Chapter 13 Trustee objects to Debtor's homestead exemption arguing that the partial rental of Debtor's house constitutes an abandonment of the homestead protection under Section 3 of the Homestead Act. (Dkt. 12, 21, 38 & 59). The Trustee argues that the perfunctory and mechanical application of the meaning of the word "exclusively" in Section 3 should be the basis for the Court's decision regarding the true scope, operation and application of the fundamental social and economic policies promoted in Law 195 of 2011.

LEGAL DISCUSSION

4. First, we start with the proposition that "[e]xemptions should be liberally construed in favor of the debtor." *In re Brown*, 391 B.R. 210, *5 (6th Cir BAP 2008) (unpublished opinion) It is well established that when the legislator's intent is ambiguous, exemptions should be liberally interpreted in favor of the Debtor. *Id.* "[I]f it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." *Id.* citing *In re Martinez–Whitford*, 199 B.R. 74, 77 (Bankr.D.Mass.1996). The party objecting to an exemption has the burden of proving that the property claimed by the debtor should not be exempted. *Id.* citing Fed. R. Bankr.P. 4003(c). The Court must follow the principle that any ambiguities found in state exemption laws must be resolved in favor of debtors. *In re Nelson*, 178 B.R. 811 (Bankr. W.D. Virg.1994) (citations omitted); *see also*, *In Re Soto*, 2013 WL 3779382, *3 (Bankr. D.P.R. 2013) (Noting that the Puerto Rico Supreme Court has refused to follow the literal interpretations of a statute if doing so leads to an absurd result not in accordance with its legislative intent).

5. The standard uniformly applied to objections to homestead exemptions is that of 'abandonment'. *See* discussion of abandonment at Debtor's Reponse Dkt. 30 pp. 12-16; Debtor's Rejoinder Dkt. 48, pp 4-6. "Once the claimant has made a *prima facie* case in favor of homestead status, the objecting party has the burden of demonstrating that the homestead rights have been terminated." *Graham v. Kleb*, 2008 WL 243669, *2 (S.D. Tex. 2008) (citing Bankr. Rule 4003(c); other citations omitted). A homestead is abandoned when it no longer serves as the owner's bona fide home and place of permanent residence. *In re Lloyd*, 394 B.R. 605, 611 (Bankr. M.D.Fla 2008) (internal citations and quotations omitted)

6. At issue in this contested matter is the scope and meaning of the word "exclusively" in Section 3 of the Act, which reads as follows: "*Every individual or head of household domiciled in Puerto Rico shall have the right to own and enjoy, under the homestead right concept, a parcel and the structure located thereon, [...,] which belongs to him or which he lawfully owns, and occupied by him or his family **exclusively** as a principal residence*". (*Homestead Act, Section 3*) (bold supplied)[3]

---

[3] This is the formal translation of the Act. Debtor counsel is a man of modest grammatical and linguistic skills, but his humble opinion is that the official translation has obvious grammatical flaws and substantive omissions. For example, when describing the components of the homestead estate, the Spanish text describes "*a farm consisting of a parcel of land and the structure located thereon*"... The words in bold are omitted in the translation yet this is the principal component of the homestead, the farm (or estate). In another example, the Spanish "*..., y **estuviere** ocupado por este or **por su familia**...*" should translate as "*..., and **that is** occupied by him or **by** his family...*" The boldface words are missing, making the translation improper in form. "Estuviere" is the Spanish subjunctive future form of the verb, "to be" and in the statute, *estuviere* modifies the status of the homestead requiring that it be occupied by the owner. That is so because "ocupado" is written in the male form, thus encompassing the, "una finca" (the farm or lot of land, female) and "la estructura" (the structure, female) that comprise the "hogar seguro" (the homestead estate (male subject)). The subjunctive, *estuviere*, introduces uncertainty, hopefulness or wishful thinking by the writer that things in the future will be as he wishes and expects, but not necessarily so. Likewise, in the phrase "or his family" the translation missed the preposition "by" between the "or" and "his family", as such: "or *by* his family". This makes the treatment of two separate subjects "him" or "his family" seem mutually interchangeable and awkward in violation of the disjunctive function of the word "or" placed between them separating their character, function, and qualifications under the law. Nevertheless, Debtor reiterates his belief that substance of the law, history, social policy, legislative purpose, equity and common sense are the best tools to decide this dispute, not singular words or faulty translations.

3

7. There being no dispute as to Debtor's use the house as his principal residence, the Trustee has to establish abandonment either by fact or by operation of law under the Act. He cannot.

8. In the beginning, the Trustee's sole argument was that a literal application of the word "exclusively" in Section 3 of the Act creates occupancy **and** usage restrictions so severe, that it essentially nullifies the homestead rights that the very same statute sought to grant and extend to the overburdened homeowners of this nation and their families. To obliterate the new and revolutionary homestead protections granted under the Act, the Trustee relied upon the Merriam Webster online dictionary and a timid reference to a bench order issued by the Hon. Judge Tester in a similar case. (Dkt. 21, Trustee's Memo ¶¶ 8, 12)

9. Next, the Trustee filed a Sur-reply (Dkt. 38) wherein he attacks and dismisses off-hand the Debtor's well thought-out and supported arguments as being "erred". (Sur-reply, Dkt. 38 ¶16)[4] However the Trustee failed to address the sole legal issue before the Court, that is: Does partial rental of the house constitute abandonment of the homestead protection? Instead, the Trustee cited authority for strict interpretation of the statute contrary to federal doctrine when analyzing exemptions; he delves into an exploration of the Act, comparing and contrasting the old law and the new; he conveniently disregards Texas case law referenced by the Act as the authority to follow together with Florida law, and he cites the decision in a factually similar case of *In re Veguilla*, 504 B.R. 316 (Bankr. D.P.R. 2014) decided by the Hon. Judge Lamoutte, of this court.

10. In fact, it is not until the Trustee's latest memo at docket 59 ¶14 ("Trustee's Motion in Compliance") that he finally acknowledges the legal standard underpinning this contested matter, abandonment of the homestead protection. The standard of abandonment of homestead in Puerto

---

[4] Interestingly enough, the Trustee rejects and criticizes an alternative reading of Section 3 proposed by Debtor in his Response (Dkt. 30 pg. 3, f/n 20) because it would require reading the term "exclusive" into the Act in order to make better sense of its provisions. (Sur-reply Dkt. 38 ¶9) Apparently the Trustee overlooks the fact that his argument against the Debtor as concerns the interpretation of the word "exclusively" rests entirely upon the definition of the word, "exclusive". (See Trustee's Memo Dkt. 21, ¶8; Sur-reply Dkt. 38 ¶5) A word that is not in the statute...

4

Rico, just like in other jurisdictions cited in Debtor's memoranda, was established by the PRSC in various cases under the old homestead laws. (See Trustee's Motion in Compliance, Dkt. 59, pp 9-11 for reference case law) The PRSC cases discussed by the Trustee apply to this case insofar as they ratify the Debtor's argument that we cannot interpret and apply the fundamentally equitable and humanitarian policies of homestead protection through dogmatic adherence to the literal meaning of words or functions of grammar or by reliance on sophisticated but unavailing exposés in charts, reviews and explanations of old homestead laws that were abolished and entirely changed by Law 195. (See Debtor's Response Dkt. 30 ¶¶ 8-11, 35-37)

11. The Debtor's position is that despite the ambiguity introduced by the word exclusively, there is no ambiguity in the historically important policies underlying the statute which must be enforced to benefit homesteaders. The Act's revolutionary *in rem* right of protection attaches to the estate itself and protects the entire land and the entire structure from attachment and forced sale by general creditors with few exceptions not relevant here. Therefore, the disputed language can be read as compelling people to claim and inhabit one, and only one single—or exclusive—principal residence. This, in order to safeguard the interests of creditors against multiple homeowners and reinforce the criminal penalties under the law.

12. Unlike the old laws, Law 195 requires a notarized writing with the full faith and credit of the Commonwealth to claim homestead. Coupled with the Law's reference to criminal sanctions in Section 10 for registering or causing the registration of more than one homestead, the word 'exclusively' limits the principle residence to a single property actually occupied by the claimant or by his family, but not necessarily exclusively occupied by them or for residential use only.

13. Previously, the only right protected was a sum of money akin to federal exemptions in bankruptcy. Law 195 protects Puerto Rico's most basic institution, *the family*, from the social,

5

economic and emotional trauma of losing its home to general creditors. *Homestead Act, Statement of Motives, pgs. 1-2.* In fact the Trustee has finally accepted that Law 195 "was a breakthrough from the former homestead laws" and changed the legal landscape in every material way. (Dkt. 59 ¶¶2-3) Unfortunately, he clings steadfastly to his old objection.

14. Alternatively, the word exclusively in the phrase "*occupied... [by the homesteader's] family exclusively as a principal residence*" can be interpreted as applying solely to the use given to the house by the homesteader's family when the homesteader is not residing in it. This interpretation conforms neatly with the various provisions of the Homestead Act that provide for continuation of the exemption in cases where the owner or head of family is no longer present, such as Section 6: *Death, Abandonment [of the family], or Divorce*, where the next-of-kin, widows and minor children con claim and continue the protection in place of the disappeared principal claimant; and Section 7: *Leasing*, where similar to Section 3, the causes justifying the principal claimant to lease the entire residence are made extensive to the family occupying the homestead in the absence of the main claimant. As seen in the referenced Sections, the family acts as a placeholder for the principal homestead claimant. Therefore 'exclusively' can only apply to the family's use of the homestead as its principal residence because, if the claimant is present and occupying the house, it appears superfluous to require him to exclusively occupy what has already been declared as his principal residence. The family under the Act includes a wide-range of relatives of many possible ages whom enjoy the protection even after the claimant is physically gone or dead. The legislator took notice that family members of the claimant may not always be able, legally qualified or willing to take his place under the law. Therefore, if anyone other than the claimant wants to *continue* the homestead exemption they must be family members described in the statute and they are compelled, as placeholders for the claimant, to use

6

this and only this property as their exclusive principal residence. Otherwise, we will have cases of claimants who have abandoned the estate keeping it from the reach of creditors –and bankruptcy trustees-- by asking any family member to stay there and act as if they live there although not true.

15. Debtor reiterates his principal argument that exclusively is meant to prevent frauds on creditors by requiring people to claim and live in only one property as a principal residence. Alternatively, because exclusively is written right after the word 'family' and given the legal ability of family members to preserve and prolong the homestead in the claimant's absence, then exclusively serves to regulate the use and/or occupancy of the property by the family.[5] These are just two plausible and reasonable interpretations of the function of the word exclusively offered without having to add or subtract from the statute or render meaningless any of its words or provisions. Contrary to the Trustee's argument, more that one interpretation of 'exclusively' can be found to give force and effect to the important social policies imbued in the statute. On this ground, the Court must overrule the objection.

16. The Debtor believed there were no Puerto Rico state court precedents directly applicable to this controversy. Based on the Trustee's discussion of SCPR cases in his Motion in Compliance, ¶¶16 & 17 and on Debtor's analysis, Debtor will now revisit this position. The case of *Santoni v Llinas*, 10 D.P.R. 199 (1944) is very instructive in this matter.

17. As aptly discussed by the Trustee, *Santoni* ruled against a creditor challenging the right of homestead due to, among other facts, the partial rental of the property. Whereas the legal issue placed before the PRSC in *Santoni* was waiver of the homestead protection, the facts and the

---

[5] Note that Debtor is not conceding that the word exclusively can legally serve as a double restriction affecting both the use and occupancy of the homestead as argued by the Trustee. Debtor proposes that exclusively only defines the rights of the family, not the claimant. Debtor does not believe that exclusively is intended to regulate either the use or the occupancy of the house to any singular function or any discrete group of people.

7

holding conclusively support Debtor's claim of homestead in this case. In *Santoni*, the wife, Mrs. Santoni, and her children left the homestead for particular reasons and the husband remained behind inhabiting just one room of the residence. The remainder of the residence was leased and operated as a hotel. The husband mortgaged the property and signed a waiver of homestead right on behalf of himself and his wife. The husband defaulted and the creditor foreclosed on the property. Years later, Mrs. Santoni returned and sued the creditor to claim her homestead right worth $500 under the old law. In upholding the wife's right to claim the $500, the PRSC rejected any notion of abandonment of the principal residence notwithstanding the fact that the home was partially rented and administered more like a hotel than a private residence. The court simply did not find any evidence or intent to abandon the homestead under the circumstances.

18. On the facts, *Santoni* is clearly applicable to this case, where we have partial rental of the homestead coupled with residency by the Debtor. *Santoni* also illustrates the monumental change in public policy between the old homestead laws that only protected a right to money but did not protect against attachment and foreclosure by creditors, and Law 195 that protects against liens by general creditors and protects the entire value of the homestead.

19. *Santoni* and other inapplicable abandonment cases reviewed by the Trustee are instructive insofar as their holdings are subsumed into the provisions of Section 7 of the Act, *leasing*. Section 7 prescribes a three-prong test as the only basis for abandonment of the homestead under the Act in cases where the principal residence is being leased. First the homestead claimant, or his family if they hold the claim, must be physically removed from the premises for the causes listed in the statute that are not at issue here. Next, the lease must involve ***the entire residence***. Not just a portion of it. Finally, abandonment takes place if the claimant or his family that was holding his claim takes up a principal residence elsewhere, even if they had good cause to leave.

Once again, we find the forbiddance of taking up another principal residence away from the homestead that you claim is protected against creditors. The injunction against taking up another principal residence in Section 7 grants further support to Debtor's reading of 'exclusively' as meaning legally claiming and actually keeping only one principal residence.

20. Clearly the facts of this case do not meet the very strict and limited test for abandonment set forth in Section 7. In this context, the Court should apply the rule of statutory interpretation that *expressio unius est exclusio alterius* (the express mention of one thing means the exclusion of all others). Because Section 7 specifically spells out that Debtor may lose the homestead protection if he completely rents his house after physically leaving it and taking up another principal residence elsewhere, we can conclude that the legislator intended to exclude partial rental of the house as indicia of abandonment. Clearly the legislator could have mentioned partial rental in Section 7 or elsewhere as an instance of abandonment. Instead the legislator chose to incorporate the old decisions of the PRSC rendered under the old law to prescribe the only basis for abandonment of the homestead by virtue of renting it. Thus, abandonment requires leaving the property, renting the entire homestead, and taking up another principal residence elsewhere. Applying the *expressio unius* doctrine to the facts of this case, the Trustee's objection must be overruled because partial rental while you reside in the property was not included as an event of abandonment in the statute.

21. In the Motion in Compliance and in other memoranda the Trustee relies upon rules of grammar and linguistic analysis. For example, the Trustee now expands his reading of 'exclusively' by advocating that the word "and" in the phrase "…which he lawfully owns, and occupied by him.." in Section 3 actually conjoins the term "exclusively as a principal residence" after the word, "family", and compels a finding that the house must be owned *and* occupied *and* used

*exclusively* as a principal residence by Debtor. (Dkt 59 ¶¶6-10) This is strained reading. The conjunction "and" in that phrase logically connects the requirement of ownership and occupancy in the person of the principal claimant because, except for unique circumstances such as divorce without division of property or widowhood, rarely will a family member be the owner of the homestead. Nothing else can be derived from 'and' in that context and in fact, the term 'and' further undermines the Trustee's argument for exclusivity. The reason is that, since a family member in this context will seldom be the "owner" of the property, that causes the phrase "**…or [by] his family exclusively as a principal residence**" to be read in complete isolation from the claimant—whom must own *and* occupy the residence.

22. Furthermore, Debtor notes that customary applications of rules of grammar and of statutory construction such as the last antecedent rule espoused by the Trustee are "flexible and not universally binding" when the rule can be overcome by other indicia of meaning. *See, In Re Renteria*, 470 B.R. 838, 842 (9th Cir BAP 2012), *citing Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). We must not lose sight that the statute exempts the complete structure, not a part of it and that the right to file a claim of homestead protection is granted to an individual or head of family, i.e., the homeowner and not the entire family. Also, note that the claimant in Section 3 is separated from his family by the word "or" which always acts as a disjunctive incorporating two different concepts and requires two separate forms of analysis of the nouns "him"--the claimant, as distinguished from "his family", as holders of the right in place of the claimant.

23. Clearly then, the reader is perfectly justified in making a mental pause after reading "owned, and occupied by him" (pause) then move on to "or [by] his family" and reading separate requirements for the family. This reading does not obliterate the statute, nor does it insert words

where there are none and indeed gives meaning to every aspect of Section 3 while at the same time preserving the statutory purpose and intent of the law in favor of Debtor.

24. Finally, the Trustee's reliance on *In re Veguilla (published as, In re Navarro)*, 504 B.R. 316 (Bankr.D.P.R. 2014) to the extent it purports to apply the holding in *In re Englander*, 156 B.R. 852 (Bankr. M.D.Fla. 1992), *affirmed*, 95 F.3d 1028 (11th Cir. 1996) is inapposite and misguided. Debtor's honest opinion is that *Veguilla* misapplies the holding in *Englander* on the specific issue at hand: Debtor's partial rental of his homestead. Instead *Veguilla* attempts to incorporate *Englander's* remedial aspects based on facts and issues under Florida law that are not applicable to this matter. *Englander* is on point only as it concerns the partial rental of the homestead because the court held that, notwithstanding the occupancy restriction under Florida's homestead law and evidence of clear legislative purpose against the commercial uses of homestead, the debtor was entitled to his full exemption after finding that the rented garage apartment at issue was built on homestead property for utility purposes and not rental purposes. In this case, it is undisputed that the Debtor's purpose in subdividing his residence is to provide housing for his family, and not for commercial purposes. At any rate, commercial use of Debtor's house is perfectly permitted under the tax laws of Puerto Rico without affecting his homestead.

25. The Trustee rejects the plausible scenarios presented in Debtor's Response (Dkt. 30 ¶15) that will face this Court under the local Homestead Act as seeking "advisory opinions". (Sur-reply pp. 19-20 §37). Yet in his Motion in Compliance, the Trustee engages in a discussion about a hypothetical "Donald Hotel Developer" and his imaginary and magnificent "Hotel California" located somewhere on the north coast of this this lovely 100 x 35 square miles piece of real estate that we lovingly call, Puerto Rico. (Dkt. 59 pp 4-5) Debtor will not address this aspect of

the Trustee's final memo as it is utterly irrelevant and immaterial to this case. Suffice it to say that if poor, old Donald had a *bonafide* principal residence in any portion of the hotel, the PRSC could find for him against the Trustee following its ruling in *Santoni*.

26. Therefore occupancy of any portion of the structure by the Debtor as a principal residence comports with the public policies sought to be fostered by the statute and any restriction on the use of the structure in the manner pressed by the Trustee can only apply, if at all, to the family in Section 3, but does not necessarily extend to the owner logically or linguistically.

27. More than disputes over language and technical rules of statutory construction, Debtor's argument is guided by simple principles of hermeneutics. First and foremost, all new law replaces the old and if the new law is susceptible to more than one interpretation, then we must choose the one that produces the best results. Grammar and linguistic analysis are there to aid in the construction and application of the law as it was intended by the legislator. Logic in case of statutory ambiguity serves to help discern the social and historical context in which the law came to be and knowledge of history helps to the extent of understanding how and why the new law was enacted to replace the old law. Sociological context helps us apply the new law effectively to address the social changes that it promotes.[6]

28. Under the above guidance, Debtor prays Law 195 be given its intended meaning and purpose favoring the grant of exemption. The Homestead Act was unquestionably passed to protect to overburdened and struggling debtors of Puerto Rico from losing to ordinary creditors and bankruptcy trustees, their last valuable possession: Their home. The Act was legislated with few restrictions or conditions upon the homesteader—certainly nothing in the provisions of the Act supports the onerous restrictions of use and occupancy argued by the Trustee. Its words can and should be read with logic and reason to carry out its remedial purposes and no other restrictions

---

[6] See, La guia del derecho: Hermeneutica Juridica at, http://derecho.laguia2000.com/parte-general/hermeneutica-juridica.

should be imposed or distilled from its plain language than those readily contained in the text. This Law was enacted at a time when tens of thousands of Puerto Ricans per year are fleeing the economic depression experienced in the country for nearly a decade. The Law came to be in the midst of the largest foreclosure boom ever experienced in the country; a boom that is devastating debtors as well as creditors. The old homestead laws did not run as an *in rem* right in property as does the Act, but only protected a miserable amount of money that did nothing to preserve the dignity and well-being of the Puerto Rican family and society at large.

29. Law 195 must be read harmoniously in conjunction with existing laws that provide for and protect the public's interest from homestead abuses. Such as Law 80 of 1991 that concerns the collection of real property taxes, or "CRIM". Most homesteads in Puerto Rico are fully exempt from real property taxes. The CRIM law causes homeowners to lose a portion of their tax exemption when they use their residence for other permissible uses, including professional services, business and rental activities. The Puerto Rico Tax Code of 1994 was amended by Law 117-2006 to implement the IVU or sales tax and by Law 40-2013 to provide for the exemption from collecting sales taxes in various categories of services. Under the Tax Code as amended, Debtor was required to register as a merchant for purposes of the IVU taxes, though he is not required to collect them. Through merchant registration, the government insures itself that people who partially rent their residence will have to disclose this income in their tax returns and pay taxes on money that previously could go unreported.[7] Clearly the legislator knew or had to be aware of these tax laws allowing for other commercial uses of residential property when he used the word 'exclusively' in Section 3 of the Act. Clearly, the legislator did not intend to amend or

---

[7] See Carta Circular de Rentas Internas Num. 13-14 at, www.hacienda.gobierno.pr/publicaciones/carta-circular-de-rentas-internas-num-13-14, Part II A item 11, expressly exempting from sales tax collection individual tax payers who collect rent payments from the partial leasing of their principal residence. Debtor underscores that this aspect of the discussion is not about compliance with local tax laws, but about reading Law 195 harmoniously with other laws that regulate and affect the uses for a person's homestead.

13

abrogate the Tax Code through Section 3 of the Act in order to prohibit Debtor from partially renting his property under penalty of abandonment of his protections.

30. Law 195 is an attempt to mitigate the terrible social and economic consequences that rampant debt collection, attachment and foreclosure processes are having on our society. Once before this Court ruled against the homesteader, departing from federal interpretational tradition and limiting the protections of the Act based on perceived ambiguity in Section 4 of the statute. The local legislature with swift to react and overrule this Court, stating that the exemption is also available to protect against the reach of creditors in bankruptcy.[8] Based on that history, if we are going to err in interpreting the protections in Law 195, then it should be on the side of debtors.

31. In summary, the Debtor's interpretation of the function of the word "exclusively" in Section 3 of the Homestead Act is plausible and sensible in view of the stated policies and protections intended under the Act. The Act's reference to criminal sanctions is reinforced by the use of "exclusively" and seeks to balance debtor protections with the rights of creditors by strictly forbidding debtors from making their residence in another property while claiming the homestead exemption for a more valuable one, or several. Alternatively, the word "exclusively" may only apply to condition the use of the homestead when the family, not the claimant, is in possession of the residence. If the Court finds any ambiguity in the statute, it must construe it in favor of Debtor. If the Court arrives at any possible reading of the disputed text in any manner that gives it meaning without denying Debtor the protection of the Act, it must find for Debtor. The PRSC in *In re Rivera Garcia*, already held that the Act is ambiguous and contains many "lagoons". The issue regarding partial rental is one such "lagoon" and yet, it is a perfectly valid use of the house under Section 7 that only forbids the full and complete rental of the house

---

[8] *See, In re Pérez Hernández*, 473 B.R. 496 (Bankr.D.P.R.2012); Public Law 257-2012, amending the Homestead Act Section 4 to overrule *Perez Hernandez* making the local exemption available in bankruptcy cases.

14

without good cause. Finally the Court should follow and apply *Santoni* in conjunction with Section 7 to find that partial rental of the house does not constitute abandonment of the exemption by Debtor.

32. In conclusion, the Court must harmonize the letter of law with federal interpretational policy of reading exemption statutes in the light most favorable to debtors. Also, the Homestead Act must be construed by reference to the state law tradition of expanding homestead rights in the face of ambiguity and inequity. If the exemption can be interpreted in a way that benefits debtors, the Court should adopt that interpretation. Under any analysis, the Trustee failed to carry his burden of demonstrating that Debtor abandoned his homestead. This matter is ripe for adjudication and Debtor prays the Court enter its decision without further proceedings.

THEREFORE, for all the foregoing reasons, the Debtor pleads and prays that the Court, 1) overrule the Trustee's objection to the homestead exemption, and 2) allow the Debtor's full homestead exemption and confirm the proposed chapter 13 plan.

RESPECTFULLY SUBMITTED in Arecibo, Puerto Rico, this 16th day of December, 2014.

By: /s/ *Edwin Matos*
EDWIN MATOS MALDONADO
USDC 226403
FELIX M ZENO GLORO
USDC 124212
LIAVANESSA FONTANEZ RUIZ
USDC 213707

PO BOX 1945 ARECIBO P.R. 00613
TEL: 787-879-1760; FAX: 880-2756
tribunal@zenogloro.com

**13-05391-MCF13** ANTONIO OTERO NAZARIO
**Case type:** bk **Chapter:** 13 **Asset:** Yes **Vol:** v **US BANKRUPTCY JUDGE:** MILDRED CABAN FLORES
**Date filed:** 06/28/2013 **Date of last filing:** 12/03/2014

# Creditors

**CitiFinancial, Inc**
PO Box 70919
Charlotte, NC 28272-0923
(3757661)
(cr)

**Antio, LLC**
c/o Weinstein & Riley, P.S.
2001 Western Ave., Ste. 400
Seattle, WA 98121
(3890621)
(cr)

**CITIFINANCIAL PLUS**
300 SAINT PAUL PL
BALTIMORE, MD 21202
(3746777)
(cr)

**CITIFINANCIAL PLUS**
CITIFINANCIAL/ATTN: BANKRUPTCY DEPARTMEN
PO BOX 140069
IRVING, TX 75014
(3746778)
(cr)

**COOP A/C MANATI**
PO BOX 30562
MANATI, PR 00674-8516
(3746779)
(cr)

**GE Capital Retail Bank**
c/o Recovery Management Systems Corp
25 SE 2nd Ave Suite 1120
Miami FL 33131-1605
(3809937)
(cr)

**GECRB/WALMART**
ATTN: BANKRUPTCY
PO BOX 103104
ROSWELL, GA 30076
(3746781)
(cr)

**GECRB/WALMART**
PO BOX 965024
ORLANDO, FL 32896
(3746780)
(cr)

**MONEY EXPRESS**
CONSUMER SERVICE CENTER
BANKRUPTCY DIVISION (CODE 248)
PO BOX 9146
SAN JUAN P R 00908-0146
(3753035)
(cr)

| | |
|---|---|
| **PRESTAMAS**<br>POB 11890<br>SAN JUAN, PR 00922 | (3746782)<br>(cr) |
| **SANTANDER FINANCIAL**<br>POB 71504<br>SAN JUAN, PR 00936 | (3746783)<br>(cr) |
| **SANTANDER FINANCIAL D/B/A ISLAND FINANCE**<br>PO BOX 195369<br>SAN JUAN PR 00919-5369 | (3749981)<br>(cr) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 12/16/2014 14:18:24 | | | |
| PACER Login: | fz0002:2552128:0 | Client Code: | |
| Description: | Creditor List | Search Criteria: | 13-05391-MCF13<br>Creditor Type: All |
| Billable Pages: | 1 | Cost: | 0.10 |